John Duggan *v.* Francisco de Paulo de Lizardi and others.

One who appeals must bring before the Supreme Court all the parties, contradictorily with whom the judgment complained of was rendered, and who are interested in its remaining undisturbed.

There is a difference between the obligations of co-heirs, and of joint obligors by contract. The law apportions among the heirs, all the charges of the inheritance, and each heir may, perhaps, be sued separately, for his virile share. C. P. 120. C. C. 1370, *et seq.; aliter* as to co-obligors by joint contract, all of whom must be sued together. C. C. 2080 *et seq.* In the one case, it is a condition of his inheritance that each heir shall pay his share of the debt ; but, in the other, no one of the obligors can release himself at will.

In actions on joint obligations, all the original parties must be sued together, even those who may have performed their part ; no judgment can be pronounced, unless it be shown that all joined in the obligation ; any judgment must be against each defendant separately for his portion, but, *in solido*, for the costs. (C. C. 2080 *et seq.* ;) and all the parties below must be made parties to the appeal, though a part only have appealed, or the appeal must be dismissed. Those who have not appealed must be cited as appellees.

Appeal from the Commercial Court of New Orleans, *Watts,* J. The petitioner alleges, that the defendants, who had formed a particular partnership under the style of the New Orleans Tobacco Warehouse Company, are indebted to him in the sum of

$16,692 50, for services rendered by him, under a contract with them, as a superintendant of their establishment, at an annual salary of $5000, commencing from 10th April, 1837. Judgment was prayed for, against the defendants, in proportion to their interest in the establishment, as set forth in the petition.

Judgments by default were confirmed against some of the defendants ; others filed general denials ; and some specially denied, that they ever belonged to the association. There was a judgment in favor of the plaintiff for $10,138 89, and against each of the defendants for their proportions of that sum, calculated according to their respective interests in the partnership, and against the whole, *in solido*, for the costs. From this judgment five of the defendants alone appealed. The others were not cited as appellees.

*Benjamin*, for the plaintiff, moved to dismiss the appeal, on the ground that the action was on a joint obligation, and all the defendants were not made parties ; citing *Drew* v. *Atchison and others*, decided at Alexandria, at the October term, 1842.

*Grima, Soulé, L Peirce*, and *Janin*, for the appellants.

BULLARD, J. The plaintiff and appellee moves to dismiss this appeal, on the ground that the action is against joint obligors, and that all the defendants in the court below, are not made parties to the appeal. His counsel relies upon the case of *Drew* v. *Atchison and others*, 3 Robinson, 140, decided at the last term at Alexandria, in which we held, that, in actions upon joint obligations, all the parties to the judgment below must be before us on the appeal, otherwise it would be dismissed.

It is urged by the counsel for the appellants, (four* out of eleven of the original defendants,) that the above decision is not in harmony with several previous ones rendered by this court, and particularly that of *Burke* v. *Erwin's Heirs*, 6 La. 320, and *Farrar* v. *Newport et al.*, 17 La. 346.

Our desire to put the question at rest, and our respect for the opinions of those members of the profession who doubt the correctness of the last decision, have induced us to consider the question as still open, and to review attentively the several decisions heretofore rendered.

---

* Five appealed.—R.

It has long been recognised by us as a general rule, that he who appeals must bring before us all the parties, contradictorily with whom the judgment complained of was rendered, and who have an interest that it should remain undisturbed.　This rule has been applied particularly to warrantors, and in actions of partition; and in relation to the latter, its propriety is admitted by the counsel in this case.　It would, indeed, be difficult to give a good reason, why, in all cases, the same parties should not be before us on appeal, who were parties to the judgment, when it is considered that we have the power to render such judgment as should, in our opinion, have been given below.

It is said, that the case of *Burke* v. *Erwin's Heirs*, sanctioned a different proceeding.　It is true the court said, in that case, that the omission of some of the defendants to appeal, could not affect the right of the others to do so.　That is strictly true, and perhaps the court did not go far enough, and say, that when only a part of the defendants appeal, they ought to bring the others before us.　But there appears to us to be a difference between the obligation of heirs, and of joint obligors by contract.　The law portions among the heirs all the charges of the inheritance, and each heir might be sued, perhaps separately, for his virile share. Civil Code, art. 1370, *et seq.*　Code of Practice, art. 120.　Not so the co-obligors by a *joint contract*.　The code requires that all should be sued together.　In the one case it is a condition of his inheritance, that each heir shall pay his share of the debts, and he may exonerate himself by renouncing the succession; in the other, no one of the joint obligors can release himself at will. The executors of the last will of Erwin had employed an attorney whose fee was a charge upon the estate, and judgment was asked against the heirs, each for his virile share.　Some of the heirs did not appear, and yet the plaintiff took judgment against the others. Some of the defendants appealed, and the motion was to dismiss the appeal on the ground, that all the defendants had not appealed. But it was not until the case of *Drew* v. *Atchison* arose, that we had occasion to consider those peculiar provisions of the code which govern actions on joint obligations—provisions which require that all the original obligors should be sued together, even those who are known to have paid their share; that no judgment

shall be pronounced unless it be shown that all joined in the obligation, and that judgment shall be given separately against each defendant for his proportion of the debt, but, *in solido*, for costs. Civil Code, art. 208, *et seq.* Whatever we may think of the wisdom of such provisions, we are not authorized to disregard them; and we think it fair to conclude, that the Legislature intended there should be the same parties on the appeal as in the court below, when there exists a privity of contract between them. In no other way can we render that judgment, in a joint action, which ought to have been rendered in the court below, if we should be of opinion that the court erred. The contrary practice would lead to great incongruities. In the same action, and on the same contract, A. might be condemned to pay one sum as his share, and B. another and a different one; nor do we conceive that we impose any hardship on such of the parties as are dissatisfied with the judgment below, to place the case before us as it was before the first Judge. Those who do not choose to appeal, may be cited in as appellees. To this it is said, the appellant has nothing to ask of those who have been condemned like himself. But suppose it be the plaintiff who appeals, must he not bring all before us who were cited below? And if, in the court below he was bound to sue even a party who had paid, would he not be obliged to cite him on the appeal, in order that the same question might be presented to the Supreme Court which was presented below. If this be true of the plaintiff, why should it not apply to one or more of the defendants, when they seek to reverse a judgment rendered in a joint action against all the defendants? and surely there is no greater absurdity in citing as appellee a co-defendant, than in suing a party, who had paid his share of the joint debt.

After the best reflection we have been able to give to this subject, we think ourselves bound to adhere to the decision in the case of *Drew* v. *Atchison.*

*Appeal dismissed.**

*L. *Janin*, *Grima*, and *L. *Peirce*, for a re-hearing, contended:

I. That they were justified by the jurisprudence of this court in not citing their co-defendants.

II, That any new construction of the law of practice which the court may adopt, should be prospective in its operation, and not be established at the cost of an innocent suitor,

III. That in an action on a simple moneyed obligation, the necessity of making all the obligors parties exists in the lower court only, and not on appeal, where it would be unmeaning, and could produce no effect.

IV. That the proceeding suggested in the case of *Drew* v. *Atchison,* is unknown to any system of jurisprudence, from which we occasionally borrow; and that the analogous common law process of summons and severance would be dispensed with in a case similar to this, because what has occurred would be considered as equivalent to it.

I. In the case of *Burke* v. *Erwin's Heirs,* 6 La. 323, the facts were; that the heirs of Joseph Erwin had employed the plaintiff, an attorney at law, to settle the estate of their ancestor. He brought suit against them for a fee of $5000, and obtained judgment against the heirs for their virile shares. Some of the heirs appealed, others did not, and the court said, in answer to a motion to dismiss the appeal, that the omission " of some of the defendants to appeal, cannot affect the right of the others to do so."

In the case of *Farrar* v. *Newport,* 17 La. 340, an appeal from a judgment in an action of partition was dismissed, because all the co-proprietors had not been made parties to the appeal. The appellant believed he could rely on the case of *Burke* v. *Erwin's Heirs,* but the court distinguished between an action of partition, and one on an ordinary moneyed obligation. The different nature of the suits obviously suggested this distinction. If the inferior court should have decreed a partition by licitation, and the Supreme Court should decree a partition in kind, and some of the co-proprietors should not have been parties to the appeal, the two judgments would be in irreconcilable conflict. But in regard to ordinary suits on contracts for the payment of money, the court approves, in the following words, the doctrine of the former case.

" We are not ready to controvert this rule, which, on the contrary, appears to us to be a proper and safe one to adopt for the protection of the rights of the suitors, who, thinking themselves aggrieved by a judgment, would sometimes be without a remedy if their right to appeal was to depend upon the will and disposition of their co-defendants."

These apprehensions, these inconveniencies, are exemplified by the present case. In these remarks which speak to his reason, the practitioner found his guide, and this was the unquestioned jurisprudence of the court until the case of *Drew* v. *Atchison.*

II. In the case of *Drew* v. *Atchison,* it was unequivocally held, that an appeal from a judgment, on a joint obligation must be dismissed, if all the obligors are not parties to the appeal.

Of that decision, rendered in October, 1842, at Alexandria, some eight or ten months after this appeal had been taken, not yet printed, and which no doubt the merest accident brought to the knowledge of plaintiff's counsel, the

defendants and the entire bar of New Orleans, knew nothing. The counsel who addressed the court in behalf of the defence, [Mr. Janin,] was employed in this suit only very lately, and has not to defend himself from the painful imputation of having ruined his clients' cause by an oversight. But such an imputation, if cast upon his predecessors and associates, would be the height of injustice. If the question was doubtful, it was the counsel's duty to ascertain the practice and opinion of the Supreme Court ; these he found recorded in *Farrar* v. *Newport.* Inclining before the learning and authority of that court, his aim and ambition was to follow in its footsteps, and with such a guide he had a right to feel secure. It can hardly be questioned that but for the case of *Drew* v. *Atchison,* the plaintiff's able counsel would not have made the motion in question ; that had this case been argued before the case of *Drew* v. *Atchison* was decided, such a motion, if met by the authorities now opposed to it, would have been disregarded. The question must have been one of common occurrence, and until that case it never was doubted. While the counsel adhered to the established practice of the court, he could not be charged with neglect or ignorance. " The practice is the law of the court, and as such is a part of the law of the land." Tidd's Practice, Introduction, LXX, and cases there cited. And if the counsel did his duty, his client's right to bring his case before this court on the merits, must be safe.

No law expressly requires what is now insisted on ; it may be obscurely deducible from art. 2080 of the Civil Code ; but neither this article, nor the cases above referred to, are quoted in *Drew* v. *Atchison ;* and it is, therefore, neither improbable, nor disrespectful to the court, to conjecture that this decision was rendered in the midst of an unparalleled pressure of business, and without that previous preparation and assistance from counsel, which the court has a right to expect, and of which every court is more or less in need.

But whether this last decision be correct, or, as we shall attempt to show, obnoxious to serious objections, it will at least be conceded, that it determines a *doubtful* point, one as to which this court has doubted, and of which they formerly thought differently. We certainly shall not contest the right of this court, to alter its views, or its jurisprudence, and retract what it may recognize to have been an error. But we respectfully submit, with entire conviction, that in matters of *form,* in matters of *practice,* any alteration in the jurisprudence of the court should be merely prospective in its operation. Thus, in this instance, the court, if adhering to the case of *Drew* v. *Atchison,* might say, that although they will hereafter dismiss an appeal under such circumstances, yet as this appeal was taken before the decision of *Drew* v. *Atchison,* as the appellants were probably influenced by the previous decisions of this court, and as the omission complained of cannot affect the merits, they will retain the case.

It is thus this court has not unfrequently expressed itself. Such considerations are familiar to other tribunals of eminent merit and reputation. A contrary course would be equivalant to punishing parties for the mistakes of the

court, and for their confidence in its wisdom.   The law does not require, and equity abhors much unnecessary harshness ; and we humbly submit, that courts would be unjustifiable in refusing to exercise in such cases, the discretionary power confided to them.

III.  Articles 2080, 2081, 2082, of the Civil Code, require all the obligors in a joint contract to be sued together.

The paragraph of which the articles form a part, is taken from the common law ; see 1 Chitty's Pleadings 42—44.   The very term " obligation conjointe" is unknown to the French law.   For the intelligence of this paragraph we may derive help from English and American, but not from French authorities.   What is the object of this requisition ?   As the whole amount of the joint obligation is rateably apportioned among the obligors, their number must be known to ascertain the share of each of them, art. 2080 ; and according to art. 2082, the obligor who has paid his proportion must be cited, in order that he may recover back the amount he has paid, if the contract should be annulled.

But after judgment and an appeal, the same reasons no longer exist for requiring the appearance of all the obligors, for the contract is resolved into as many judgments as there are obligors.   While some of the obligors might appeal, others might compromise with the plaintiff, or refuse to appeal, or allow the delay to elapse without doing so.   If one of the appellants should prove, that he was not a party to the contract, the Supreme Court, with all the evidence before it, might increase the contribution of the other appellants without touching those defendants who have not appealed.   If one of the defendants should have paid his proportion after the judgment, he would certainly not be permitted to appeal ; and although, on the appeal of his co-defendant the contract should be annulled, he could certainly not recover back what he has paid.   If nevertheless it should be necessary to make the defendant, who has compromised, a party to the appeal, the absurdity would follow, that the Supreme Court would have to decide upon a matter which is finally settled and beyond its reach, and to render a judgment which could not be executed.

It is easily conceived how an unsuccessful plaintiff can make all the *defendants* appellees ; he clearly has an interest and a power to do so.   But a case of joint *defendants* who are cast in the inferior court, is quite different ; if several of them only choose to appeal, can they make their co-defendants *parties to the appeal ?*  If parties to the appeal, they must be either appellants or appellees.   They cannot be made appellants, for this requires acts to be done by themselves, security, appearance, &c., which their co-defendants, who cite them in, have no right to do for them.   To make them appellees would involve a similar absurdity.   The appellants would have to execute bonds in favor of their co-defendants, from whom they demand nothing ; they would have to pay the costs of their co-defendants, or the bonds are meaningless, and parties united by the same interest would stand opposed in hostile

Duggan v. De Lizardi and others.

array. The appellants could not interfere in any settlement between the plaintiffs and their co-defendants, whom they might have attempted to make appellees. They could not have prevented the execution of the separate judgments which the plaintiffs might have obtained against the defendants, thus involuntarily dragged before the Supreme Court. And if these defendants should not appear within a year from the rendition of the judgment, and declare that they join in the appeal, nay, make themselves appellants, can it be doubted that they would be considered, and treated as if they had submitted to the judgment of the inferior court? And if they should appear, and refuse to be parties to the appeal—

After such a declaration, it would not be pretended, that they still would be parties to the appeal, either as appellants or appellees ; and if they are not, then, according to the pretensions of our adversary, the appeal must be dismissed, because all the joint obligors are not before the court. In other words, the right of some of them to appeal might be defeated by the refusal of others to join them. These considerations show clearly enough the difference as to the obligors in the court below, and in the Supreme Court, when by the previous judgment of the inferior court their responsibility has been severed, and they have become independent of one another.

Cases of partition, and others in which the object claimed is a *determinate* one, or *indivisible*, require indeed, that all those who have a joint interest should join in the appeal. But they rest upon peculiar principles, different from that which it is now attempted to apply to a claim for a sum of money. The nature of these suits, and of the *subjects involved in them*, renders the execution of a judgment against part of the co-proprietors impossible, without affecting the parties that are not before the court. Not so when a sum of money is claimed jointly from several co-obligors. A judgment in such a case is several ; in the case of partition, or in a suit against three for the delivery of a horse, the judgment is joint. In the former case an appeal by some of the defendants, does not suspend the execution of the several judgments rendered against the other defendants. In the latter class of cases, the appeal by *one* defendant suspends the execution of the entire judgment, because it cannot be executed in part, and suspended in part.

IV. The articles which are opposed to us require in terms, the appearance of all the co-obligors only in the lower court. The reasons which the law gives for this requirement—the reimbursement of what may have been paid by one of the obligors, if the contract is annulled, and the necessity of knowing the number of the co-obligors—have been shown to have no existence on appeal, on account of the changed position of the parties. The requirement can therefore not be extended by analogy to the appeal, for the analogy fails. We have also shown the impossibility of making the recusant defendants, in the case under consideration, either appellants or appellees.

But there is another very obvious reason for the appearance of all the co-obligors, to wit : the prevention of separate suits against each of the co-obligor,

on the same matter arising out of the joint contract.    And for the same rea-
son, a multiplicity of appeals from one judgment rendered against co-obli-
gors should be avoided.    This is the only motive for requiring the appearance
of all the co-obligors, or something equivalent to it, on *appeal*.    If, then, seve-
ral out of a greater number of co-obligors against whom judgment has been
rendered, should neglect to appeal, how can their co-defendants bring them
before the Supreme Court?    Not by an abortive attempt to make them either
appellants or appellees ; but by a process which the common law calls
summons and severance, and which is so untechnical, and so obviously indica-
ted by the relation of the parties, that no legislative provision is necessary to
authorize us to adopt it ;  and which ought the more readily to be adopted as
the doctrine of joining co-obligors, here discussed, of which it is the necessa-
ry complement, has been taken from the common law.

Tidd, in his Practice, vol. 2, p.  1176, says :  " If any writ of error be
brought in the name of several parties, and any one or more of them refuse to
appear and assign errors, they must be summoned and severed ; after which
the writ may be proceeded in by the rest alone."    Ibid. 1169.

Thus, the defendants who do not appeal may be called upon by their appeal-
ing co-defendants to declare whether they will appeal or not ;  and if they ne-
glect to appear, they are considered as having abandoned the appeal, and the
court decides the case between the remaining parties.

This rational mode of proceeding  avoids all the incongruities into which the
plaintiff's suggestions would  lead us,  imposes no  useless hardships, and ac-
complishes every practical purpose of the law.

We did not resort to this, or a similar process in the present case, for it was
unnecessary.  Those defendants who have not appealed, have not allowed an en-
tire year to elapse  since the  original judgment :  they can no longer  appeal ;
the case is the same as if on being summoned they had failed to appear, or ex-
pressly  declared  their  unwillingness to  do so.    The multiplicity of appeals
against which this provision of the law is intended to guard, is no longer to be
feared.

If the proceeding here suggested, should be sanctioned by the court, the re-
quirements of  strict law and of  enlightened  equity would  be  *reconciled.*    If
some of the co-obligors should alone  appeal, and the year  should not be out,
the appeal might be dismissed, and the appellants might yet  take out another
one, and summon and sever.    If the year be out, when the case is called for
argument, the non-appearing defendants would  be considered  as  having aban-
doned the appeal.

The following remarks of Judge Story, in the case of  *Todd et al.* v.  *Dan-
iel*, 16 Peters, 523, are singularly appropriate to this case.

" The proper rule in cases of this sort, where there are various defendants,
seems to be, that all the defendants affected by a joint decree, (although it may
be otherwise, where the  defendants have separate  and distinct interests, and
the decree is several, and does not jointly affect all,) should be joined in the

Duggan v. De Lizardi and others.

appeal ; and if any of them refuse, or decline upon notice and process (in the nature of a summons and severance in a writ of error) to be issued in the court below, to become parties to the appeal, then that the other defendants should be at liberty to prosecute the appeal for themselves, and upon their own account; and the appeal as to the others be pronounced to be deserted, and the decree of the court below as to them be proceeded in and executed. In the present case, what has occurred is equivalent to such proceedings. All the defendants originally claimed an appeal ; some of them have declined to pursue it at all ; others have deserted it since it was pending in this court; and, therefore, there is no pretence to say, that any practical inconvenience can occur from Todd's now prosecuting it alone, since the other defendants have all had notice and declined to interfere, and are content to abide by the original decree."

If this appeal should be dismissed, no other could be taken, for the case· was eighteen months on the docket before it could be reached. The dismissal of this appeal is equivalent to an adverse judgment on the merits. It is conceded, that the absence of our co-defendants cannot prejudice the plaintiff, while their presence might have had that effect. It is, therefore, on a purely technical ground only that the defendants would be defeated. No text of our law—no clear analogy—no obvious induction, compelled the court to decree that point as it did. Doubting the wisdom of the recorded provision, as is plainly indicated in the opinion under review, the court had also long doubts concerning its meaning ; and when this appeal was taken, its jurisprudence was such as would have supported it.

Neither the common law, still less chancery, would require the dismissal of this appeal ; and our law does not deserve the reproach of being more technical and unfeeling for the rights of the citizens than either. The law is not a mathematical science ; and a greater or less degree of vacillation is incident · to every progressive system of jurisprudence. But we believe that, while it is the duty of courts, when they discover that they have been in error in asserting a principle arising out of the relations or contracts of parties, promptly and manfully to retract it ; on the other hand, if it is as to a mere matter of practice that their views are altered, they should inquire whether any real injury has been sustained by the party who denounces the supposed irregularity, and every reasonable facility should be afforded to place the case before the court on the merits. In the practice of the law much is arbitrary ; many a point is acknowledged to be so because it has been so decided—It has been so decided because in the absence of positive law the judges had to choose between considerations of nearly equal weight; such a system grows up by successive trials, in which errors are inevitable, and in which the courts and bar mutually assist each other. But no necessity can exist for establishing a point of practice by the ruin of the suitor in whose case it arises.

*Re-hearing refused.*